IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ANDREW RICHARDSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 08 C 4824 |
| CITY OF CHICAGO, Illinois, a municipal corporation, and Chicago Police Officers DARRIN MACON, TIM TATUM, RALPH HARPER, PHILLIP ORLANDO, WILLIAM MEISTER, PATRICK FORD, LEO SCHMITZ, and GLENN EVANS, | ) ) ) ) ) ) ) ) | Judge Virginia M. Kendall |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andrew Richardson ("Richardson") sued the City of Chicago ("the City") and eight members of its police department, Officer Tim Tatum, Officer Ralph Harper, Sergeant Phillip Orlando, Detective William Meister, Detective Patrick Ford, Commander Leo Schmitz, and Lieutenant Glenn Evans (collectively "On-Duty Defendants"), as well as Officer Darrin Macon ("Officer Macon") (collectively "Defendants"), under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. The undisputed facts of the case are set forth in the Court's prior ruling in *Richardson v. City of Chicago*, 2011 U.S. Dist. LEXIS 24659, 1-2 (N.D. Ill. Mar. 10, 2011). (Doc. 214). The surviving claims proceeded to trial on November 29, 2012. On December 7, 2012, the jury found in favor of Richardson on his excessive force claim against Officer Macon. (Doc. 332). The jury awarded him one dollar in compensatory damages and $3,000 in punitive damages. The jury found in favor of all of the Defendants on Richardson's claims of false arrest, conspiracy, and malicious prosecution. Richardson moves for: (A) a new trial on damages on his claim of excessive

force against Officer Macon; (B) judgement as a matter of law against Commander Schmitz and Lieutenant Evans for their untimely answer to his Complaint; and (C) a new trial against all of the On-Duty Defendants. (Doc. 348). For the following reasons, Richardson's Motion is denied in its entirety.

**I. STANDARD FOR RECONSIDERATION**

The Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59(a)(1)(A). A new trial can be granted on merely some of the issues rather than all of the claims. *Id.* The Court may grant a new trial if the verdict is against the manifest weight of the evidence or if a prejudicial error occurred. *See Bankcard Am., Inc. v. Universal Bancard Sys.*, 203 F.3d 477, 480 (7th Cir. 2000). However, "[a] new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (citations omitted).

The Court may alter or amend a judgment when a party brings to light manifest errors of law or fact, or newly discovered evidence. *See* Fed. R. Civ. Pro. 59(e); *see also United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). A Rule 59(e) motion is not a "vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could have and should have been presented to the district court prior to the judgment." *Id.* Nor is a Rule 59(e) motion an avenue to rehash arguments already considered and rejected by the Court. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party."). Manifest errors of law are the "rare" instances where "the Court has patently misunderstood a party . . . or has made

2

an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales*, 906 F.2d 1185, 1191 (7th Cir. 1990). The decision to grant a Rule 59(e) motion is entrusted to the sound discretion of the district court. *See In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

## II. DISCUSSION

Richardson's claim of excessive force derives from a first date gone wrong. Richardson went on a date with a woman who, unbeknownst to him at the time, had ended a tumultuous relationship with Officer Macon. Officer Macon soon made himself known at the end of their date by barraging his ex-girlfriend's phone with profanity-laced messages, blocking Richardson's car with his own car, and throwing his soda drink on his ex-girlfriend, all of which prompted Richardson to remove his shoes and earrings, take out a baseball bat and threaten Officer Macon's car. Richardson admittedly act foolish in then getting into his car to chase Officer Macon's car into a nearby parking lot to obtain his license plate. (Tr. 11/29/11 P.M., p. 100-102). The parties dispute whether Officer Macon began chasing Richardson's car but the parties do not dispute that eventually Officer Macon stepped out of his car, raised his gun and fired directly at Richardson's car, causing the bullet to pierce the driver's side door, shatter the window and embed itself into the driver's seat. The On-Duty Defendants soon arrived at the scene due to Officer Macon's radio call for back-up and arrested Richardson based on Officer Macon's statements to them about the baseball bat and car chase. For Richardson's claim of excessive against Officer Macon, the jury awarded Richardson one dollar in compensatory damages and $3,000 in punitive damages. For Richardson's claims of false arrest, conspiracy, and malicious prosecution, the jury found in favor of all of the Defendants. Richardson now moves for: (A) a new trial on damages for his claim of excessive force against Officer Macon because, he argues, the damages award goes against the manifest weight of the

3

undisputed evidence; (B) judgement as a matter of law against Commander Schmitz and Lieutenant Evans for their untimely answer to his Complaint; and (C) a new trial against all of the On-Duty Defendants with the inclusion of a spoliation instruction regarding a missing surveillance video from the Target parking lot.

**A. New Trial on Damages for Claim of Excessive Force Against Officer Macon**

Richardson argues that $1 in compensatory damages goes against the manifest weight of the undisputed evidence of physical damage to his car, which was one of the two types of damages that were submitted to the jury for their consideration when determining compensatory damages.[1] Notably, Richardson does not argue that the award goes against the manifest weight of the evidence of his emotional pain and suffering, which was the second type of damage that the jury could consider. In fact, Richardson does not address any evidence that was submitted at trial about his pain and suffering, such as his sister's testimony about his withdrawal from some family activities, in his motion for a new trial on damages and consequently any argument based on pain and suffering is waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Richardson points out that the Seventh Circuit has noted that nominal damages and excessive force claims make "strange bedfellows." *Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996). However, the Seventh

---

[1] Jury Instruction No. 41: "If you find in favor of Plaintiff, then you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find he sustained as a direct result of Defendants' conduct toward him. These are called "compensatory damages."

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork.

For the excessive force claim, this does not mean, however, that compensatory damages are restricted to the actual loss of money; they include the physical and mental aspects of injury, even if they are not easy to measure. For the excessive force claim, you should consider the following types of compensatory damages, and no others:

1. The mental/emotional pain and suffering and loss of a normal life that Plaintiff has experienced. No evidence of the dollar value of mental/emotional pain and suffering or loss of a normal life has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate Plaintiff for the injury he has sustained; and

2. The damages caused to Plaintiff's vehicle."

4

Circuit also specified in *Briggs* that its holding "is a far cry from holding that nominal damages are *never* permissible once the jury finds excessive force." *Id.* (emphasis in original). There are three situations under *Briggs* where nominal damages might be appropriate to remedy an excessive force violation: (1) where an arresting officer uses both justifiable and excessive force, but any injury results from the use of justifiable force; (2) where a jury reasonably concludes that evidence of a plaintiff's injury is not credible; or (3) where a plaintiff's injuries are insufficient to justify with reasonable certainty a more substantial measure of damages. *See Id.*; *see also Frizzell v. Szabo*, 647 F.3d 698, 701-702 (7th Cir. 2011). Richardson argues that none of these scenarios applies to the instant case; Officer Macon argues that both the second and third apply.

Richardson presented undisputed evidence that Officer Macon fired his gun directly at Richardson's car, causing the bullet to pierce the driver's side door, shatter the window and embed itself into the driver's seat. The parties agree that the first *Briggs* scenario is inapplicable, because only one act of force was at issue: Officer Macon's direct shot at Richardson's car. As to the second scenario, the credibility of the photographic evidence was never disputed. Numerous photographs of the bullethole and the pierced carseat and were introduced into evidence at trial by both Richardson and the Defendants. Several witnesses–including the Defendants–testified as to the visible physical damage.[2] Therefore the second *Briggs* scenario is inapplicable. The third *Briggs*

---

[2] Q. Now, what shape was your car in once you got it out of police impound?
A. The window was busted out. Where the police officer shot at me, there was a big hole in the door. The seat was ripped out of where the bullet entered the back of the seat from the side. And I was having mechanical damages with the vehicle too as well.
Q. Do you attribute that mechanical damage to the shooting?
A. The way it was towed and the shooting.
[. . . ]
Q. The -- after you got your car out of the police impound, were you able to drive it?
A. Yes.
(Tr. 11/29/2012 P.M. p. 22-24).

5

scenario does apply in support of the jury's award of nominal damages. Richardson argues that "common sense and life experience" instruct that car repairs cost more than $1, and that this fact should be sufficient to warrant a new trial. However, Richardson did not document what it actually cost to repair his car. Despite repeated questioning by the Defendants' counsel at trial, Richardson failed to present the jury with any vehicle repair invoices, bills, or even estimates that would have placed a quantifiable monetary value on the damage to his car. At trial, Richardson testified that it cost him "about $200" to have the window fixed. (Tr. 11/29/2012 P.M., p. 23). He did not testify with certainty as to the measure of the damages, nor did he provide any other approximate measure of damages to his car due to the shooting. It is not unreasonable for the jury to have concluded that the shooting constituted excessive force but to have felt unable to justify with reasonable certainty a more substantial measure of damages. This is similar to a jury's choice not to place a monetary value on a plaintiff's physical injuries while still finding that the plaintiff suffered from illegal excessive force. *See, e.g., Briggs*, 93 F.3d at 360 (affirming denial of new trial because as "the district court aptly stated, 'the issue of damages depended upon the credibility of the plaintiffs, and there is evidence in the record from which the jury could have disbelieved the extent of their physical and emotional injuries.'").

In *Frizzell v. Szabo*, the jury awarded the plaintiff nominal damages for his claim of excessive force, and the Seventh Circuit affirmed the denial of a new trial. 647 F.3d 698 (7th Cir. 2011). It that case, it was undisputed that the plaintiff was tasered at least five times and then sprayed with pepper spray. The plaintiff also testified at trial that the defendant officer jumped or knelt on his chest, causing him to suffer from fatigue for two weeks and to lose his job. *Id*. at 701. The Seventh Circuit affirmed the denial of a new trial on damages, explaining that the jury might

6

have believed that the tasering was justified while the pepper spray and the alleged jumping on the plaintiff's chest was excessive "but that but that these applications of force caused little or no quantifiable injury or pain." *Id.* at 702. Similarly here, the jury could have believed that the shooting was excessive but that the injury was difficult to quantify, especially because Richardson only approximated the monetary value of his injury. The jury instruction was that Richardson must have proved his damages by a preponderance of the evidence, and the "award must be based on evidence and not on speculation or guesswork."[3] (Jury Instruction 41). It is not unreasonable for the jury to have found that quantifying the car repairs would require speculation or guesswork on their part–much like quantifying mental distress, from which Richardson testified that he suffered after the shooting and which the jury was instructed to also consider when awarding damages, but which Richardson does not raise as a ground for a new trial on compensatory damages.[4] Indeed, the

---

[3]"If you find in favor of Plaintiff, then you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find he sustained as a direct result of Defendants' conduct toward him. These are called "compensatory damages."

Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork.

For the excessive force claim, this does not mean, however, that compensatory damages are restricted to the actual loss of money; they include the physical and mental aspects of injury, even if they are not easy to measure. For the excessive force claim, you should consider the following types of compensatory damages, and no others:

    1. The mental/emotional pain and suffering and loss of a normal life that Plaintiff has experienced. No evidence of the dollar value of mental/emotional pain and suffering or loss of a normal life has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate Plaintiff for the injury he has sustained; and
    2. The damages caused to Plaintiff's vehicle."
(Jury Instruction 41).

[4]Q. Tell the ladies and gentlemen of the jury how you felt then after the shooting occurred?
A. I felt very scared. This had never happened to me before, and I almost lost my life that evening, and mentally that changes my view on life, so -- and just paranoid.
Q. Besides being paranoid, have there been any changes new even to date based on that occurrence back on August 25th, 2007?
A. Yes.
Q. Can you describe some of those for the ladies and gentlemen of the jury?
A. I don't hang out a lot with my family and friends as much. I still am paranoid. Sleep is -- sleep is interrupted.
Q. Have you sought any psychiatric treatment as a result of the events of that night?
A. No. Q. Why not?
A. The expense at the time and I don't have medical insurance.

jury could have disbelieved that Richardson had the car repaired at all. This reasoning is in line with Seventh Circuit precedent. *See Clarett*, 657 F.3d at 674; *see also Bankcard Am., Inc.*, 203 F.3d at 480 (affirming denial of a re-trial on the damages awarded because "[d]espite all the rough edges, however, having a jury of ordinary folk listen and watch while lawyers question witnesses, introduce documents, and present arguments is, for better or worse, how this country resolves business disputes like this one that the parties cannot solve themselves."). Due to the paucity of evidence quantifying the cost of damages to Richardson's car, nominal damages do not shock the conscience and the jury's verdict does not cry out to be overturned. Consequently, Richardson's motion for a new trial on the issue of damages from his prevailing claim of excessive force is denied.

### B. Judgement as a Matter of Law for Untimely Answer by Commander Schmitz and Lieutenant Evans

Richardson moves for judgement as a matter of law against Commander Schmitz and Lieutenant Evans for their untimely answers to his Complaint; or in the alternative, for a new trial in which both defendants admit the factual allegations against them listed in his Complaint. Under Federal Rule of Civil Procedure 6(b)(1)(B), the Court could–and did–in its discretion, extend the deadline by which Commander Schmitz and Lieutenant Evans had to file their answer if they failed to act because of "excusable neglect." This Rule 6(b) inquiry is two-pronged. *See Zingerman v. Freeman Decorating Co.*, 99 Fed. Appx. 70, 72 (7th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). "First, the moving party must demonstrate that his failure to meet the deadline was because of neglect." *Zingerman*, 99 Fed. Appx. at 72. "Neglect exists where the failure to meet a deadline was because of a simple, faultless omission to act, or because of carelessness." *Id.* Second, the moving party must establish that his failure to act

---

(Tr. 11/29/2012 P.M., p. 24-25).

was excusable. *See Id.* Whether a case of neglect is excusable is "an equitable determination that must take into account all relevant circumstances surrounding the party's failure to act, including the danger of prejudice to the non-moving party, the length of the delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (citing *Pioneer*, 507 U.S. at 395).

There is no dispute as to the first prong of the inquiry, as Schmitz's and Evans' original counsel and trial counsel readily confessed that they simply overlooked their responsibility to file an answer on their clients' behalf. (Doc. 301). As to the second prong, the Court has previously analyzed the issue. (Doc. 307). In its prior ruling granting Schmitz and Evans leave to file their answer instanter, the Court examined the relevant circumstances, including their otherwise vigorous defense throughout the suit, including their filing of a motion to dismiss and a motion for summary judgment in which they clearly disputed Richardson's allegations. These equitable considerations, among others, led the Court to find that their failure to answer had no discernable impact on the proceedings and therefore that their neglect in timely filing an answer was excusable on the eve of trial. (Doc. 307). Advancing the argument again, Richardson fails to provide any additional analysis of the relevant factors under Rule 6(b), much less bring to the Court's attention any manifest errors of law or fact, or newly discovered evidence pursuant Rule 59(e). *See United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010); *see also Oto*, 224 F.3d at 606 (a Rule 59(e) motion is not an avenue to rehash arguments already considered and rejected by the Court).

Richardson presents only the argument that "[j]ust because Plaintiff chose as a strategy to lay in wait to file its trial brief instead of raising the issue earlier does not mean there was no prejudice." (Doc. 348, p. 8). Richardson fails to articulate what that prejudice comprises. Schmitz

and Evans disputed Richardson's allegations for two years before trial, and Richardson's strategy backfired when equitable considerations on the eve of trial weighed against entering default on procedural grounds and in favor of trying the allegations on the merits. Furthermore, the jury returned a verdict in favor of all of the On-Duty Defendants on all of the counts against them, and not solely in favor of Schmitz and Evans–which dispels the argument that prejudice attached due to their failure to file an answer. Therefore the Court holds in accordance with its previous ruling that in the absence of any true prejudice to Richardson, and without a showing of a manifest error or newly discovered evidence, Richardson's motion for judgment as a matter of law against Schmitz and Evans, or in the alternative for a new trial, is denied.

**C. New Trial for Failure to Give a Spoliation Instruction**

Richardson also moves for a new trial against all of the On-Duty Defendants because the Court denied Richardson's jury instruction on spoliation with regards to the Target store surveillance video. The evidence showed that Detectives Ford and Meister viewed the videos at the Target store the morning after the shooting and decided that they had no evidentiary value. Internal police investigators from the police Office of Professional Standards ("OPR") viewed the video, and in a letter to the OPR, they stated that one of the videos did not show any police activity or altercation while the other showed only what appeared to be a car chase. (Doc. 348-1). The evidence report states that the images are unclear and do not capture the actual point at which Officer Macon discharged his weapon. (Doc. 348-2). Nonetheless, the investigators asked a Target employee to preserve a copy of the VHS tape and to convert it to a DVD. Investigators later discovered that the DVD was blank, although it was never established that the DVD was ever legible while in the possession of the OPR. Due to the lack of evidence of any intentional act or bad faith presented

from these facts, the Court denied Richardson's jury instruction on the spoliation of evidence, and agreed to revisit the issue if testimony at trial provided any further support for the instruction. (Doc. 307). The Court found it relevant that a video had existed prior to trial. Accordingly, the Court denied in part the Defendants' motion in limine to bar any reference to the video, permitting Richardson to cross-examine witnesses on the issue.

Richardson argues that it was not this Court's province to determine whether the loss was in bad faith, but rather for the trier of fact to decide–thus no matter how the video was lost, its loss at the hands of the City warranted the spoliation instruction. However, a defendant's "destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case." *Park v. City of Chicago*, 297 F.3d 606, 616 (7th Cir. 2002)(affirming district court's rejection of a jury instruction on spoliation of evidence). Rather, to draw such an inference, the defendant must have intentionally destroyed the documents in bad faith. *See Id.; see Spesco, Inc. v. General Electric Co.*, 719 F.2d 233, 239 (7th Cir. 1983)("This circuit requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence to support the tendered instruction" lest it suggest improperly to the jury that a party "failed to produce at trial relevant but harmful evidence under its exclusive control."). "Thus, the crucial element is not that evidence was destroyed but rather the reason for the destruction." *See Id.* (quoting *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982)). Richardson did not present any reason for the alleged destruction of the video, nor did he present any evidence to conclusively show that the destruction occurred at the hands of the Defendants, rather than the Office of Professional Standards, the Target employees, or VHS tape vagaries. Further, whether the act was intended by any of the

11

Defendants was also never shown. Other than Richardson's own speculation, he failed to adduce evidence that the Defendants intentionally or in bad faith destroyed the video. Consequently, a jury instruction on the spoliation of evidence was unsupported by the evidence and unwarranted. *See Spesco, Inc.*, 719 F.2d at 239.

Nonetheless, Richardson also argues that even if the loss of the video was not in bad faith, a violation of a retention policy creates a presumption that its contents would have been adverse to the Defendants. While a violation of a record retention regulation "creates a presumption that the missing records contained evidence adverse to the violator," the presumption will not apply unless the failure to retain records actually violates the terms of the applicable retention regulation. *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998) (presumption inapplicable because the record-keeing regulation excused inadvertent violations and there was no evidence that the purported violation was not inadvertent.). Richardson presents no applicable retention regulation. Richardson was allowed to cross-examine the Defendants on the issue of the existence of the video and yet elicited no evidence or inference at trial that its later nonexistence was due to the Defendants' failure to follow a retention regulation. Regardless, this Circuit has consistently held that "absent bad faith, a violation of [a] record retention regulation, would not automatically trigger an adverse inference." *Park*, 297 F.3d at 616. In this case, an adverse inference was not automatically triggered because the record lacked any indicia of bad faith or intent on the part of the Defendants. Because Richardson failed to establish that the loss of the video was in bad faith, the Court need not address whether an unnamed explicit retention policy was violated and by whom (the Defendants or OPR) and whether its potential violation raised a presumption of adverse evidence–particularly when the record indicates that such a presumption would have been rebutted.

*See S.C. Johnson & Son, Inc.*, 695 F.2d at 258; *see also Beniushis v. Apfel*, No. 98 CV 395, 2001 WL 303548, *4 (N.D. Ill. Mar. 27, 2001) ("to impose the sanction of an evidentiary presumption adverse to the responsible party, it must be found both that (a) the missing evidence was likely unfavorable to the responsible party (which is the presumption drawn from violation of the regulation) and (b) the loss of the records was willful or in bad faith"). The record indicates that the videos did not necessarily contain adverse evidence, as even Richardson's criminal defense attorney testified prior to trial that she did not seek the video from Target because it was too far from the shooting to be of use.[5] (Doc. 240, Ex. A). That testimony is consistent with the reports drafted prior to trial by the OPR investigators. At trial, the parties did not present evidence that would indicate bad faith. Instead, the manifest weight of the cumulative indicates that–at most–the witnesses disagreed as to how clearly the video captured the car chase in the Walgreens' parking lot. This portion of the car chase was undisputedly of Richardson following Officer Macon, and not vice versa. Thus, even if a car chase was visible in the video, its evidentiary value would have been cumulative rather than compelling for Richardson's case.

These facts are a far cry from the "suspicious circumstances" of *Niehus v. Liberio*, which Richardson cites in support of his argument. 973 F.2d 526 (7th Cir. 1992). In *Niehus*, the Seventh

---

[5]Q. Did you make any attempts to get any either Target or Walgreens' surveillance camera footage?
A. Yes, yes.
Q. What did you do in order to get that?
A. I both called and sent a subpoena, I believe. It would have been Walgreens, though, not Target. Target was too far away.
Q. Did you call and subpoena both Target and Walgreens?
A. No. Just -- I'm familiar with the location. And the incident happened closer to Walgreens than to Target. So the only camera that I was interested in was the Walgreens' camera at the pharmacy -- the outdoor pharmacy drive-up.
[ . . . ]
Q. What was the response to that subpoena or request that you made to Walgreens?
A. I know they didn't produce a tape. I can't remember if they said the tape was destroyed or the tape -- No. Tape wasn't working. The camera in that section wasn't working. That's what I recall. They never produced anything.
(Doc. 240, Ex. A).

Circuit affirmed the district court's jury instruction on spoliation specifically because there "were sufficiently numerous and plausible" indications of the defendant officers' concerted action in failing to produce mug shots and recordings of phone conversations, while also providing contradictory testimony about routine record retention. *Id.* at 530. While the plaintiffs' lawyer was entitled to invite the jury's attention to those suspicious circumstances, in this case the facts did not compel the Court's finding of bad faith and therefore a spoliation instruction would have been improper. *See Spesco, Inc.,* 719 F.2d at 239. The jury's verdict does not cry out to be overturned from the lack of a spoliation instruction and consequently the Court denies Richardson's Motion to do so.

**III. CONCLUSION**

For the reasons stated above, Richardson's Motion is denied in its entirety.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: **August 22, 2012**